Brandon H. Brown (SBN 266347)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Email: bhbrown@kirkland.com

Gregory S. Arovas (admitted *pro hac vice*)
Todd M. Friedman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com

Edward C. Donovan (admitted *pro hac vice*)
Stephen C. DeSalvo (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 389-5000
Email: edward.donovan@kirkland.com
Email: stephen.desalvo@kirkland.com

David Rokach (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 W Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Email: david.rokach@kirkland.com

*Attorneys for Samsung Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG RESEARCH AMERICA<br><br>Plaintiffs,<br><br>v.<br><br>ZTE CORPORATION<br><br>Defendant. | Case No. 3:25-cv-02000-AMO<br><br>**SAMSUNG'S OPPOSITION TO ZTE'S MOTION TO DISMISS THE COMPLAINT AND STAY DISCOVERY**<br><br>Hearing Date: Friday, July 17, 2025<br>Hearing Time: 2:00 pm<br>Courtroom: Room 10 – 19th Floor<br>Judge: Hon. Araceli Martínez-Olguín |

## **TABLE OF CONTENTS**

I.  BACKGROUND ................................................................................................. 2

II. LEGAL STANDARD ....................................................................................... 4

III. ARGUMENT ..................................................................................................... 4

    A.  The Court Has Personal Jurisdiction Over ZTE ..................................... 4

        1.  ZTE Engaged In Conduct In And Purposefully Directed At The U.S. Forum . 5

            a.  *ZTE Purposefully Directed Its Conduct At The U.S. Forum* ............... 5

            b.  *ZTE Took Actions From Within The U.S. Forum* ................................ 7

            c.  *ZTE Purposefully Availed Itself Of The U.S. Forum* ........................... 9

        2.  Samsung's Claims Arise From Or Relate To ZTE's U.S.-Related Activities 10

        3.  ZTE Has Not Shown Exercising Personal Jurisdiction Would Be Unreasonable ............................................................................................... 10

    B.  Samsung Adequately Pled ZTE's Violation Of Section 2 Of The Sherman Act. 12

        1.  The Complaint Alleges A Legally Cognizable Antitrust Claim ..................... 13

        2.  The Complaint Alleges A Relevant Market ................................................... 15

        3.  The Complaint Alleges ZTE Willfully Acquired/Maintained Monopoly Power ..................................................................................................................... 17

        4.  The Complaint Alleges An Antitrust Injury .................................................. 18

        5.  The FTAIA Does Not Bar Samsung's Antitrust Claim ................................. 19

        6.  The Complaint Pleads An Antitrust Claim With Sufficient Particularity ....... 20

    C.  Samsung Adequately Pled ZTE's Breach Of Its Contractual FRAND Promises 21

    D.  Samsung Adequately Pled Harm From ZTE's Unfair Competition ................... 23

    E.  No Stay Of Discovery Is Warranted And ZTE Failed To Demonstrate Otherwise. ............................................................................................. 24

IV. CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ...................................................................4

*Animal Sci. Prods., Inc. v. China Minmetals Corp.*,
    654 F.3d 462 (3d Cir. 2011)...................................................................20

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 11-cv-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011)......................18, 21, 23

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 11-CV-01846-LHK, 2012 WL 1672493 (N.D. Cal. May 14, 2012) ....................... *passim*

*Avocent Huntsville, LLC v. ZPE Sys., Inc.*,
    No. 3:17-CV-04319-WHO, 2018 WL 4859527 (N.D. Cal. July 23, 2018)...........................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................18

*Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006)..................................................................9

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007).................................................................... *passim*

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) ..........................................................................23

*ChriMar Systems, Inc. v. Cisco Systems, Inc.*
    72 F. Supp. 3d 1012 (N.D. Cal. 2014) ...................................................16, 18

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
    No. 19-CV-02520-LHK, 2019 WL 6735604 (N.D. Cal. Dec. 11, 2019) .............................6, 8

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
    485 F. Supp. 3d 712 (N.D. Tex. 2020) ............................................................14

*Copeland v. Energizer Holdings, Inc.*,
    716 F. Supp. 3d 749 (N.D. Cal. 2024) ............................................................18

*Davis v. Cranfield Aerospace Sols., Ltd.*,
    71 F.4th 1154 (9th Cir. 2023) ...................................................................5

*DiGiacinto v. RB Health (US) LLC*,
    No. 22-CV-04690-DMR, 2022 WL 20087460 (N.D. Cal. Dec. 5, 2022) ...........................24

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004).........................................................................19, 20

*Forsyth v. Humana, Inc.*,
  114 F.3d 1467 (9th Cir. 1997) ......................................................................................19

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
  905 F.3d 597 (9th Cir. 2018) .....................................................................................7, 9

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ...................................................................................13, 15

*Funai Elec. Co., Ltd. v. LSI Corp.*,
  No. 16-cv-01210-BLF, 2017 WL 1133513 (N.D. Cal. Mar. 27, 2017)..................................14

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
  No. 2:22-CV-00078, 2022 WL 4593080 (E.D. Tex. Sept. 29, 2022).............................22, 23

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
  972 F.3d 1101 (9th Cir. 2020) ..................................................................................9, 10

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
  541 U.S. 567 (2004)..................................................................................................21

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  No. 19-MD-02918-MMC, 2020 WL 5135816 (N.D. Cal. Aug. 31, 2020) .........................4, 6

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) .....................................................................................11

*Illumina, Inc. v. Qiagen NV*,
  No. C 16-02788 WHA, 2016 WL 3902541 (N.D. Cal. July 19, 2016) .................................25

*Impossible Foods Inc. v. Impossible X LLC*,
  80 F.4th 1079 (9th Cir. 2023) .............................................................................. *passim*

*Int'l Rectifier Corp. v. Samsung Elecs. Co., Ltd.*,
  361 F.3d 1355 (Fed. Cir. 2004).....................................................................................6

*Intel Corp. v. Fortress Inv. Grp. LLC*,
  No. 19-cv-07651-EMC, 2020 WL 6390499 (N.D. Cal. July 15, 2020) .................................16

*Jackson v. Rhino Ent. Co.*,
  No. 16-cv-01668, 2016 WL 11002546 (C.D. Cal. Nov. 10, 2016) ...............................22, 23

*Lacey v. Maricopa Cnty.*,
  693 F.3d 896 (9th Cir. 2012) .......................................................................................19

*Lanfri v. Goodwill of Silicon Valley*,
  762 F. Supp. 3d 849 (N.D. Cal. 2024) .............................................................................4

*Lenovo (U.S.) Inc. v. IPCom GmbH & Co., KG*,
  No. 19-CV-01389-EJD, 2022 WL 2644096 (N.D. Cal. July 8, 2022) ...............................7, 9

*In re McKinsey & Co., Inc. Nat'l Opiate Consultant Litig.*,
     637 F. Supp. 3d 773 (N.D. Cal. 2022) ...................................................................................4

*Microsoft Corp. v. Motorola, Inc.*,
     696 F.3d 872 (9th Cir. 2012) .........................................................................................22

*Microsoft Mobile Inc. v. Interdigital, Inc.*,
     No. 15-CV-723-RGA, 2016 WL 1464545 (D. Del. Apr. 13, 2016) ............................... *passim*

*Newcal Indus., Inc. v. Ikon Office Sol.*,
     513 F.3d 1038 (9th Cir. 2008) .......................................................................................15

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
     No. 5:16-CV-06370-EJD, 2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) ..........................25

*Rambus Inc. v. FTC*,
     522 F.3d 456 (D.C. Cir. 2008) ..................................................................................14, 18

*Realtek Semiconductor Corp. v. LSI Corp.*,
     No. 12-cv-03451-RMW, 2012 WL 4845628 (N.D. Cal. Oct. 10, 2012) ...........................23

*Reilly v. Apple Inc.*,
     578 F. Supp. 3d 1098 (N.D. Cal. 2022) .........................................................................18

*Singh v. Google, Inc.*,
     No. 16-CV-03734-BLF, 2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) ...........................25

*Smith v. Levine Leichtman Cap. Partners, Inc.*,
     No. 10-cv-10-JSW, 2011 WL 13153189 (N.D. Cal. Feb. 11, 2011) .................................24

*Sonner v. Premier Nutrition Corp.*,
     971 F.3d 834 (9th Cir. 2020) .........................................................................................24

*SVB Fin. Grp. v. FDIC*,
     No. 23-CV-06543-BLF, 2024 WL 1898439 (N.D. Cal. Apr. 29, 2024) ...........................25

*Tavantzis v. Am. Airlines, Inc.*,
     No. 23-CV-05607-BLF, 2024 WL 812012 (N.D. Cal. Feb. 23, 2024)..........................24, 25

*TCL Commc'ns Tech. Holdings Ltd v. Telefonaktenbologet LM Ericsson*,
     No. 14-cv-341, 2014 WL 12588293 (C.D. Cal. Sept. 30, 2014) ...............................21, 22

*Telefonaktiebolaget LM Ericsson v. Lenovo (U.S.), Inc.*,
     120 F.4th 864 (Fed. Cir. 2024) .....................................................................................22

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
     No. 24-CV-03567-BLF, 2024 WL 4981090 (N.D. Cal. Dec. 4, 2024) .............................24

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
     637 F. App'x 981 (9th Cir. 2016) ..................................................................................20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    822 F. Supp. 2d 953 (N.D. Cal. 2011) ...............................................................19, 20

*Trimble Inc. v. PerDiemCo LLC*,
    997 F.3d 1147 (Fed. Cir. 2021)....................................................................................9

*u-blox AG v. Interdigital, Inc.*,
    No. 3:19-cv-001, 2019 WL 1574322 (S.D. Cal. Apr. 11, 2019) ........................ 13, 14, 16-19

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
    200 F. Supp. 3d 1012 (N.D. Cal. 2016) .......................................................................21

*United States v. Hsiung*,
    778 F.3d 738 (9th Cir. 2015) .................................................................................19, 20

*Wi-LAN Inc. v. LG Elecs., Inc.*,
    382 F. Supp. 3d 1012 (S.D. Cal. 2019)..................................................................14, 16, 18

*Zenith Elecs., LLC v. Sceptre, Inc.*,
    No. 14-CV-05150, 2015 WL 12765633 (C.D. Cal. Feb. 5, 2015) .............................14, 21, 22

**Statutes**

15 U.S.C. § 6a ......................................................................................................................19

Cal. Code Civ. P. § 416.10(b) ................................................................................................4

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................21

Fed. R. Civ. P. 12(b)(2)........................................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................................4

**Other Authorities**

*u-blox AG v. Interdigital, Inc.*,
    No. 3:19-cv-001, Dkt. 50-1 (S.D. Cal. Feb. 25, 2019) ............................................17

*Note: All emphases added unless noted otherwise.*

1    This Court should deny ZTE's omnibus motion to dismiss all of Samsung's claims as

2 inadequately pled, immunize ZTE from jurisdiction in the U.S., and, most tellingly, stay discovery

3 until its motion is decided (while ZTE's own fast-tracked injunction actions proceed).  ZTE's "kitchen

4 sink" motion is just a gambit for delay as ZTE's arguments for dismissal or stay are incorrect.

5    ZTE's main argument—that no U.S. court has jurisdiction over ZTE—is meritless.  This case

6 involves ZTE's license demands that focused on ███████████████████████

7 ██████████ as the basis for ZTE's global licensing payment demands, which incorporate ██████

8 ████████████ in excessive royalties for Samsung's U.S. sales of standards-compliant products.

9 This case also focuses on ZTE's submission of deceptive patent licensing declarations to a cellular

10 standard-setting organization, to induce inclusion of patented technology within the standard, in a

11 scheme orchestrated from within the U.S. by ZTE's then U.S.-based head of intellectual property who

12 personally submitted many of the deceptive declarations from within the U.S.  That is more than

13 sufficient contacts for this Court to find personal jurisdiction over ZTE under the nationwide analysis

14 applicable for antitrust claims.

15    ZTE's challenge to the sufficiency of the pleadings fares no better.  Samsung's claims follow

16 well-established precedent.  ZTE's argument that the Ninth Circuit's *FTC v. Qualcomm* decision

17 eliminated all antitrust claims relating to violation of licensing commitments for standard essential

18 patents ("SEPs") is demonstrably wrong as *Qualcomm* expressly stated it was not addressing antitrust

19 claims based on "intentional deception" of standard-setting organizations, which is exactly the claim

20 Samsung raises here.  Multiple courts in this District have recognized this antitrust claim, and

21 *Qualcomm* expressly refrained from disturbing that precedent.  Likewise, contrary to ZTE's

22 mischaracterizations, Samsung's breach of contract and unfair competition claims properly allege

23 specific facts supporting each element of those claims consistent with precedent endorsing similar

24 SEP-related causes of action.

25    ZTE's motion to stay discovery and further delay this case should be denied for these same

26 reasons.  ZTE fails to meet its heavy burden to show the drastic step of blocking discovery during

27 pendency of its motion is warranted nor that discovery would be unduly burdensome here.  Further,

28 ZTE can hardly complain about the burden of engaging in litigation given it is pursuing six parallel

1    actions across the world to coerce Samsung to capitulate to ZTE's unreasonable licensing demands.

2         At bottom, ZTE's motion is a scattershot attempt to avoid accountability in the U.S. for

3    misconduct that another court has already recognized is "straight out of the overly aggressive SEP

4    owner's current playbook" and seeks to "hold up" Samsung for "unnecessarily and unreasonably high"

5    licensing payments.  While other foreign actions are directed to infringement and rate-setting, this case

6    seeks to redress ZTE's U.S.-centered wrongful conduct under U.S. law.  Samsung has properly pled

7    its claims consistent with precedent, and ZTE's motion should be denied in its entirety.

8    **I.    BACKGROUND**

9         To ensure different manufacturers' cellular mobile handsets and network equipment are

10    compatible with each other, industry participants work with standard-setting organizations to develop

11    standards that define protocols for communication between these devices.  Compl. ¶ 21.  However,

12    manufacturers who implement these standards in their products risk being held up for excessive

13    royalty demands by those who own patents covering technology allegedly essential to practicing the

14    standards.  *Id.* ¶¶ 22-24.  These standard essential patents are called SEPs.  *Id.* ¶ 23.  To address this

15    problem, standard-setting organizations typically adopt policies requiring SEP holders to commit to

16    license their SEPs on fair, reasonable, and non-discriminatory ("FRAND") terms in exchange for

17    considering the technology covered by those SEPs for incorporation into the standards.  *Id.* ¶ 26.

18         ZTE holds patents that it has declared to the European Telecommunications Standards Institute

19    ("ETSI"), an organization that sets cellular telecommunications standards such as 5G New Radio

20    ("5G") that are widely implemented in mobile communication products.  *Id.* ¶¶ 2, 21, 27; *see also,*

21    *e.g.*, Compl. Ex. 2; Exs. A, D.  In its declarations, ZTE contractually committed to license its patents

22    that are needed to practice these standards (i.e., SEPs) to standards implementers (such as Samsung)

23    on FRAND terms.  Compl. ¶¶ 27, 33-34.  ZTE was required to do this for its patented technology to

24    be considered for incorporation into the ETSI standards instead of other substitutable alternative

25    technologies.  *Id.* ¶¶ 27, 31, 52-55.  However, ZTE never had any intention of honoring its promise to

26    license its SEPs on FRAND terms, including when ZTE submitted its FRAND promises.  *Id.* ¶¶ 35,

27    54.  ZTE instead used its false declarations to deceive ETSI into locking ZTE's patented technology

28    into the cellular standards so ZTE could coerce standards implementers to pay excessive royalties for

1    ZTE's SEPs. *Id.* ¶¶ 29-35, 52. Samsung also owns SEPs it licenses on FRAND terms. *Id.* ¶¶ 2-3.

2    After extensive negotiations between the parties, in July 2021, Samsung and ZTE executed a

3    cross-license to each other's SEPs and other patents and ████████████████. *Id.* ¶¶ 4,

4    36-37; *see* Dkt. 27, Ex. 4. After that license expired, ZTE demanded ██████████ in royalties

5    from Samsung than the parties previously agreed to in 2021. Compl. ¶ 7; Ex. B. As support for its

6    global payment demands as to the 5G standard, ZTE relied on an analysis of alleged infringement of

7    ████████████████████████████████████████████████████████████████

8    ████████████████. Ex. C. Those and other ZTE U.S. patents were prosecuted by U.S. counsel

9    through interactions with the U.S. Patent Office. Compl. ¶ 17; Exs. D-F. Moreover, at least until

10   November 2023, ZTE relied on U.S.-based personnel to lead its patent program, including to

11   personally submit deceptive declarations to ETSI on ZTE's behalf. Compl. ¶ 18; Dkt. 26, Ex. 20 at 2.

12   Unlike ZTE, Samsung proposed a royalty consistent with the 2021 License and ████████████,

13   which ZTE has not accepted. Compl. ¶¶ 8, 41.

14   Samsung maintained that ZTE's SEP license demand, unlike Samsung's reasonable offer, was

15   plainly not FRAND. When the parties failed to bridge the gulf in their proposals or reach agreement

16   on Samsung's ███████████, Samsung filed an action seeking a neutral judicial resolution of the

17   FRAND terms for a patent license by the UK High Court, which is neither parties' home jurisdiction

18   and has experience resolving such disputes. Compl. ¶¶ 8, 41. While Samsung has committed to be

19   bound by the UK court's FRAND determination, *id.* ¶ 9, ZTE has not. Instead, ZTE responded with

20   an intense pressure campaign, including multiple fast-track lawsuits seeking to enjoin Samsung

21   product sales in nearly two dozen countries and a redundant FRAND case in a China court that is part

22   of the same Chinese government that has a major ownership interest in ZTE itself. *Id.* ¶¶ 8-9, 41.

23   ZTE has orchestrated all of this to force Samsung to submit to ZTE's non-FRAND demands. *Id.*

24   ZTE's ongoing misconduct made it necessary for Samsung to file this case, including to seek

25   relief under U.S. law from ZTE's U.S.-centered scheme to extract excessive patent royalties via

26   deception of the ETSI standard-setting organization and ZTE's overly aggressive conduct in seeking

27   to evade a straightforward, neutral judicial resolution of FRAND license terms. *Id.* ¶¶ 10-11.

28   Although ZTE does not contest service, Mot. at 4 n.3, ZTE's assertion that ZTE USA did not exist at

1   the time it was served pursuant to Cal. Code Civ. P. § 416.10(b) is inconsistent with documents

2   showing ZTE maintained a California registration for this subsidiary with an active registered agent

3   for service of process that ZTE terminated only after the Complaint was filed and served.  Exs. I-K.

4   ## II.    LEGAL STANDARD

5         On a Rule 12(b)(2) motion, "[u]ncontroverted allegations in the plaintiff's complaint must be

6   taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in

7   the plaintiff's favor."  *In re McKinsey & Co., Inc. Nat'l Opiate Consultant Litig.*, 637 F. Supp. 3d 773,

8   781 (N.D. Cal. 2022).  On "a Rule 12(b)(6) motion, the Court must 'accept all factual allegations in

9   the complaint as true and construe the pleadings in the light most favorable' to the nonmoving party."

10  *Lanfri v. Goodwill of Silicon Valley*, 762 F. Supp. 3d 849, 855 (N.D. Cal. 2024).

11  ## III.    ARGUMENT

12  ### A.    The Court Has Personal Jurisdiction Over ZTE

13        This Court can exercise personal jurisdiction over a defendant if: (1) it "either purposefully

14  direct[s] [its] activities toward the forum or purposefully avail[s] [it]self of the privileges of conducting

15  activities in the forum;" (2) the claim "arises out of or relates to the defendant's forum-related

16  activities;" and (3) exercising jurisdiction would "comport with fair play and substantial justice," *i.e.*,

17  it would "be reasonable."  *See Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th

18  Cir. 2023).  When, as here, an antitrust claim is present, personal jurisdiction must be analyzed on a

19  nationwide (not merely statewide) basis.  *See In re Hard Disk Drive Suspension Assemblies Antitrust

20  Litig.*, No. 19-MD-02918-MMC, 2020 WL 5135816, at *2 (N.D. Cal. Aug. 31, 2020).  Moreover,

21  when a federal claim subject to nationwide personal jurisdiction is "combined in the same suit" with

22  other claims that "arise[] out of a common nucleus of operative facts," the "court may assert pendent

23  personal jurisdiction over a defendant" as to those other claims.[1]  *See Action Embroidery Corp. v. Atl.*

24  ───────────────

[1]  ZTE's argument that its contacts with California are insufficient as to Samsung's breach of contract
25  claim is irrelevant.  Mot. at 8-10.  ZTE does not contest—including in connection with supplemental
    jurisdiction—that Samsung's federal antitrust claim (for which there is nationwide personal
26  jurisdiction) and Samsung's state law breach of contract and unfair competition claims arise from a
    common nucleus of operative facts regarding ZTE's licensing commitments to ETSI for its SEPs and
27  ZTE's violation of those commitments via, for example, its pursuit of excessive licensing payments
    for those patents.  *Compare* Compl. ¶¶ 51-56 (antitrust claim), *with id.* ¶¶ 42-47, 57-62 (breach of
28  contract and unfair competition claims).  Thus, pendent personal jurisdiction applies here.  Moreover,
    ZTE's California contacts are also independently sufficient to support personal jurisdiction over ZTE

*Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Thus, the relevant "forum" is the U.S. as a whole and personal jurisdiction is established by ZTE's contacts with anywhere in the U.S. The facts here overwhelmingly establish personal jurisdiction over ZTE in the U.S.

        1.    <u>ZTE Engaged In Conduct In And Purposefully Directed At The U.S. Forum</u>

The first prong of the personal jurisdiction test is met in any one of three independent ways. Contrary to ZTE's argument, the Ninth Circuit "'cases do not impose a rigid dividing line' between purposeful availment and purposeful direction." *Impossible Foods*, 80 F.4th at 1088-89. Instead, the first prong "may be satisfied by purposeful availment," or "by purposeful direction," or "by some combination thereof." *See Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). Moreover, the Ninth Circuit has further held that this prong can also be satisfied if the "defendant's actions were largely taken from ***within*** the" forum. *See Impossible Foods*, 80 F.4th at 1089 (emphasis in original). As a result, any one of three different bases—ZTE's purposeful direction at the U.S., ZTE's acts within the U.S., or ZTE's purposeful availment of the U.S.—are independently sufficient for this Court to find that the first prong of the personal jurisdiction test is met as to ZTE.

        a.    *ZTE Purposefully Directed Its Conduct At The U.S. Forum*

The first prong is met by ZTE's purposeful direction of its acts at the U.S. A foreign defendant purposefully directs its conduct at a forum when it "expressly aimed acts at the forum state knowing that they would harm the plaintiff there." *See Impossible Foods*, 80 F.4th at 1088. Here, ZTE's patent licensing conduct (even if outside the U.S.) was expressly aimed at the U.S. and knowingly caused harm here because ZTE knew its demands for excessive licensing payments would impose unfair costs on Samsung's U.S. business and its U.S. consumers. Compl. ¶¶ 30, 54, 56, 60-61.

In the parties' licensing discussions that led to this case, ZTE identified and analyzed alleged infringement of ███████████████████ as exemplary substantive bases for ZTE's excessive global licensing payment demands at issue in Samsung's antitrust claim. ████

---

as to all claims, each of which arise from and relate to ZTE's FRAND contracts. *See, e.g.*, Ex. Q at 22-26 (U.S.-based Zhu submits FRAND declarations to ETSI on behalf of ZTE from the Pacific time zone, presumably from ZTE's California offices); Dkt. 27, Ex. 1 at ¶ 8.2 ████████████████; Ex. F at 2-5, 10-11 (California-based attorneys prosecuting U.S. patents on behalf of ZTE, which patents were later declared by ZTE as SEPs); Ex. A (similar); Ex. E at 2, 5, 7 (examples of California-based named inventors on ZTE U.S. patents declared as SEPs by ZTE); Compl. ¶ 17.

1    ███████████████████████ Ex. C.  Notably, U.S. patents are infringed only by acts in the U.S. and are

2    entitled to payments only for U.S. products.  *See Int'l Rectifier Corp. v. Samsung Elecs. Co., Ltd.*, 361

3    F.3d 1355, 1360 (Fed. Cir. 2004) (U.S. "patent laws 'do not, and were not intended to, operate beyond

4    the limits of the'" U.S.).  Thus, ZTE's choice to focus specifically on an assertion of ███████████

5    ████████████████████████ as the basis for ZTE's excessive royalty demands satisfies

6    the "purposefully directed" standard because this conduct necessarily was expressly aimed at the

7    U.S.—Samsung's largest market where it holds nearly a quarter of the mobile device market—and

8    knowingly imposed harm specifically on Samsung's U.S. business and U.S. customers.  Exs. L-M;

9    *see, e.g.*, *Impossible Foods*, 80 F.4th at 1088; *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, No. 19-CV-

10   02520-LHK, 2019 WL 6735604, at *7-8 (N.D. Cal. Dec. 11, 2019) (nationwide jurisdiction satisfied

11   by antitrust claim based in part on charging "supra-FRAND royalties to [] OEMs in the" U.S., "cellular

12   communications standards and SEPs [that] 'are implemented throughout the'" U.S., and "harm to U.S.

13   entities" due to impeding their "ability to make products using cellular technology in the" U.S.).

14        Additionally, that ZTE has focused its patent licensing conduct on the U.S. market is further

15   demonstrated by ZTE's licensing-related contractual provisions.  The parties' licensing discussions

16   that led to this case ███████████████████████████████████████████████████████

17   ████████████████████████████. Ex. N, ¶¶ 9.1-9.2.  The parties'

18   2021 license likewise is ████████████████████. Dkt. 27, Ex. 1 at ¶ 8.2.

19        ZTE's contrary arguments are incorrect. Dkt. 26 ("Mot.") at 10-12. Given the contacts relevant

20   to Samsung's antitrust claim extend nationwide, Samsung need not show ZTE's conduct was expressly

21   aimed at California or caused harm ZTE knew was likely to be suffered in California.  Mot. at 10;

22   *Hard Disk*, 2020 WL 5135816, at *2.  ZTE's conclusory assertion that nationwide contacts allegedly

23   "fails for the same reasons that the California conduct fails" is refuted by the facts.  Mot. at 12.  It is

24   undeniable that ZTE chose to focus on ████████, that this is necessarily aimed at U.S. business

25   operations and products, and that ZTE knew harm from its conduct would be suffered in the U.S.

26   where Samsung's U.S. operations and U.S. customers would be subject to the unfair excessive patent

27   licensing cost associated with ZTE's ████████████. *See Int'l Rectifier*, 361 F.3d at 1360.

28        ZTE's reliance on the *Lenovo II* case for this point likewise misses the mark.  Mot. at 10-11.

In that case, the court declined to find personal jurisdiction based on attendance at meetings that were conducted with certain U.S. entities only at plaintiff's own request—regarding licensing discussions that otherwise were not connected specifically with the U.S. *See Lenovo (U.S.) Inc. v. IPCom GmbH & Co., KG*, No. 19-CV-01389-EJD, 2022 WL 2644096, at *12-*14 (N.D. Cal. July 8, 2022). That decision did not address personal jurisdiction based on facts such as those here, where there are U.S.-based Samsung plaintiffs and licensing discussions clearly were directed specifically at the U.S. by virtue of ███████████████████████████████████████████ ████████████████████████████████ that ZTE presented to support its excessive global licensing payment demands (and other U.S.-centered conduct addressed in the sections that follow).

> b. *ZTE Took Actions From Within The U.S. Forum*

The first prong is also independently satisfied by ZTE's actions that "were largely taken from **within** the" U.S. *See Impossible Foods*, 80 F.4th at 1089 (emphasis in original); *see also Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (noting the "well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction"). Here, a key part of Samsung's antitrust claim is ZTE's deception of ETSI by submitting commitments to ETSI that ZTE would license its SEPs on FRAND terms, to induce ETSI to incorporate the patented technology into industry standards, while knowing these commitments were false because ZTE intended to pursue excessive patent licensing payments. Compl. ¶¶ 52-54. This scheme was orchestrated largely via ZTE personnel from within the U.S.

From January 2017 to November 2023, Dr. Mang Zhu—who is based in Illinois—served as ZTE's "Chief IP Strategy Officer" and "Head of Patent Asset Management." Dkt. 26, Ex. 20 at 2. In this position, Zhu led "the team responsible for patent portfolio management of ZTE's patent assets including determining patent filing strategy, patent prosecution, portfolio assessment, licensing and litigation support." *Id.*; *see also* Ex. O ("Zhu steered ZTE's Patent Management team from its subsidiary in the US."). This included a particular focus on SEPs. *Id.* (noting Zhu conducted "internal reviews for each claim charted SEP patent" and "taught our inventors what SEPs are").

Much of the conduct at issue in Samsung's antitrust claim occurred during the nearly seven years that Zhu exercised broad leadership over ZTE's patent-related activities from within the U.S. In

that period, ZTE submitted over 200 declarations to ETSI committing to license 5G and 4G SEPs (including numerous U.S. patents) on FRAND terms. Ex. P. In fact, Zhu—acting on behalf of ZTE Corporation and using a U.S. contact address—personally submitted many of these commitments to ETSI, including for a number of the ████████ asserted by ZTE to support its excessive royalty demand. Ex. Q. During that period, ZTE also simultaneously pursued its plan to violate its commitments to ETSI by demanding excessive patent royalties, thus rendering Zhu's ETSI submissions intentionally false and deceptive. For example, ZTE demanded excessive payments from Samsung leading up to the parties' 2021 License before ultimately ████████. Compl. ¶ 4. As another example, around 2021, ZTE embarked on a strategy to generate substantial patent licensing revenue over the next several years, and that strategy—as is now apparent—relied upon a scheme to pursue excessive patent royalties. Ex. R. ZTE engaged in all this anticompetitive conduct via U.S.-based Zhu's leadership and personal involvement in these patent-related activities. Ex. S (discussing Zhu's involvement with ZTE's "licensing team" regarding "decision-making, licensing strategies, rate determination"); Ex. T (testimony by Zhu regarding ZTE's "FRAND framework" for SEP licensing). Zhu's conduct on ZTE's behalf from within the U.S. provides a further basis for personal jurisdiction. *See, e.g., Impossible Foods*, 80 F.4th at 1089-90 (finding personal jurisdiction where business and promotional activities giving rise to a trademark claim had been conducted within the forum by a "digital nomad" who was no longer present in the forum); *Cont'l Auto.*, 2019 WL 6735604, at *7-8 (nationwide jurisdiction satisfied by antitrust claim in part because "Defendants allegedly carried out their conspiracy in part through a U.S. entity").

While ZTE tries to minimize Zhu's role, ZTE ignores U.S.-based Zhu's own statements that she led patent strategy for the entire ZTE company including as it relates to SEPs and licensing. Exs. O, S. ZTE also disregards U.S.-based Zhu's personal submission to ETSI of false licensing declarations on behalf of ZTE for its 5G SEPs—conduct central to Samsung's antitrust claim.[2] Ex. Q.

ZTE's argument that Zhu's conduct within the U.S. does not matter because she managed all of ZTE's "global patent-related activities" and thus did not "expressly aim[]" her conduct at the U.S.

---

[2] ZTE acknowledges that "the core anticompetitive conduct in a *Broadcom* [antitrust] claim is the false promise made to an SSO and the SSO's reliance on that promise." Mot. at 13. That is exactly the conduct Zhu personally engaged in on ZTE's behalf from within the U.S. *See* Ex. Q.

1    is legally erroneous. Mot. at 12. When the conduct at issue occurred within the U.S., "there is no

2    further requirement that the defendant have specific knowledge that its in-state conduct would

3    eventually cause harm in that jurisdiction." *Impossible Foods*, 80 F.4th at 1090; *see Freestream,* 905

4    F.3d at 606. ZTE's reliance on the *Lenovo II* case to argue FRAND statements to ETSI are not aimed

5    at the U.S. similarly fails. Mot. at 12. *Lenovo II* only considered whether making licensing

6    commitments to ETSI (a European standard-setting organization) was expressly aimed at the U.S., *see*

7    2022 WL 2644096, at *12, not the facts here of conduct by Zhu from within the U.S. to deceive ETSI.

c.    *ZTE Purposefully Availed Itself Of The U.S. Forum*

9        The first prong is also met in a third way: by ZTE's "purposeful availment" of the U.S. forum.

10    This standard is satisfied by "creat[ing] continuing relationships and obligations with citizens of [the

11    forum]." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101,

12    1108 (9th Cir. 2020). ZTE's multiple longstanding and ongoing relationships with the U.S. and U.S.

13    citizens in connection with the subject matter of this case satisfy this test. *First*, the cellular SEP

14    portfolio at issue in ZTE's conduct before ETSI and in its licensing demands includes well over 1,000

15    U.S. patents and patent applications. Ex. A. These patents were obtained by ZTE through many years

16    of multiple interactions with the U.S. Patent Office and engagement with numerous U.S. law firms,

17    whose U.S.-based attorneys prosecuted many patents and patent applications on ZTE's behalf. *Id.*;

18    *see Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021) (hiring attorney or patent

19    agent to prosecute patent application supported finding purposeful availment). Moreover, U.S.-based

20    personnel are named inventors on several ZTE SEPs. Ex. E. *Second*, ZTE's entire patent strategy and

21    patent-related activities were led for nearly seven years by Zhu from within the U.S. *Supra* at 7-8.

22    *Third*, ZTE ███████████ in relevant contracts. *Supra* at 6. *Fourth*, ZTE engaged in licensing

23    discussions and entered licenses with U.S. companies, such as Apple which may be relevant evidence

24    for FRAND terms. Compl. ¶ 17; *see Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d

25    1356, 1365 (Fed. Cir. 2006) (noting, in contacts analysis, "the plaintiff need not be the forum resident

26    toward whom any, much less all, of the defendant's relevant activities were purposefully directed").

27        Last, ZTE's insistence that all licensing negotiations with Samsung occurred outside the U.S.

28    fails across all three of the foregoing categories of ZTE conduct that establish the test's first prong.

1   Mot. at 2.  *First*, conduct outside of the U.S. establishes personal jurisdiction when it is expressly and

2   knowingly aimed at causing harm in the U.S. as is the case here.  *See* § III.A.1.a.  *Second*, key aspects

3   of the conduct at issue in the antitrust claim did occur in the U.S. due to U.S.-based Zhu's deceptive

4   patent activities on ZTE's behalf.  *See* § III.A.1.b.  *Third*, ZTE engaged in significant contacts beyond

5   the licensing discussions that purposefully availed itself of the U.S. forum.  *See* § III.A.1.c.

            2.    Samsung's Claims Arise From Or Relate To ZTE's U.S.-Related Activities

6

7         The second prong of the personal jurisdiction test is also satisfied here because Samsung's

8   antitrust claim plainly "arises out of or relates to" all of ZTE's U.S. contacts discussed in § III.A.1 in

9   multiple ways.  *First*, ZTE's excessive licensing payment demands—███████████████████

10  ████████████—are a significant part of Samsung's antitrust claim.  Compl. ¶¶ 51-56.  *Second*,

11  Samsung's antitrust claim plainly "arises out of or relates to" ZTE's U.S.-based conduct of ZTE's

12  scheme to deceive ETSI by submitting licensing commitments while at the same time planning to

13  pursue excessive licensing payments.  Compl. ¶¶ 33-35, 54.  Indeed, ZTE acknowledges that this is

14  the "core anticompetitive conduct" at issue in Samsung's claim.  Mot. at 13; *see, e.g.*, *Impossible*

15  *Foods*, 80 F.4th at 1089-90 (finding personal jurisdiction where in-forum activities by individual no

16  longer present in the forum gave rise to a trademark claim).  *Third*, Samsung's antitrust claim arises

17  from ZTE's U.S. patent prosecution activities using U.S. counsel because ZTE has ███████████████

18  ██████████████ for its unreasonable 5G royalty demands.

19        Even if some ZTE contacts do not to give rise to Samsung's antitrust claim as directly as others,

20  all contacts nevertheless have a sufficient relationship to the subject matter here to support personal

21  jurisdiction.  The Ninth Circuit has "emphasized that courts must evaluate the parties' entire course of

22  dealing, not solely the particular contract or tortious conduct giving rise to the claim."  *See Glob.*

23  *Commodities*, 972 F.3d at 1108.  This follows from "the disjunctive nature of the legal test—'arise out

24  of or relate to,'" which indicates "the back half, after the 'or,' contemplates that some relationships

25  will support jurisdiction without a causal showing."  *Impossible Foods*, 80 F.4th at 1094.

            3.    ZTE Has Not Shown Exercising Personal Jurisdiction Would Be Unreasonable

26

27        Because the first two prongs of the personal jurisdiction test are satisfied, ZTE has the burden

28  to "come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable."

*See Impossible Foods*, 80 F.4th at 1087. Courts use seven factors to assess reasonableness: (1) extent of a defendant's purposeful interjection into the forum state's affairs; (2) defendant's burden to litigate in the forum; (3) extent of conflict with sovereignty of the defendant's state; (4) forum's interest in adjudicating the dispute; (5) most efficient judicial resolution of the dispute; (6) importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) existence of an alternative forum. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132-33 (9th Cir. 2003). ZTE fails to meet its burden under these factors, let alone make a compelling case.

ZTE argues under factors (1) and (2) that it has no relationship with the U.S. because it was barred from selling products here after its U.S. trade violations. Mot. at 14. But this disregards ZTE's continued extensive involvement in U.S. affairs via its ongoing interactions with the U.S. Patent Office to obtain thousands of U.S. patents and its ongoing relationships with multiple U.S. law firms and their U.S.-based personnel who represent ZTE in many of those interactions. *Supra* at 3, 9. Notably, regardless of whether ZTE's product sales are relevant here, ZTE's U.S. patents are directly at issue. Thus, ZTE has interjected itself deeply into U.S. affairs in connection with its U.S. patents and can hardly complain about litigating in the U.S. over this subject matter. Nor is it burdensome for ZTE to participate in U.S. court proceedings, when ZTE voluntarily engaged in U.S. legal proceedings at the Patent Office—using the same law firms for both ZTE's U.S. patent prosecution and for ZTE's counsel in this case. Exs. E-F. As to factor (3), ZTE likewise cannot complain about conflicts with sovereignty of its home forum, when this case arises from ZTE's choice to assert ████████████ and from ZTE conducting its deception of ETSI from within the U.S. via U.S.-based personnel.

Regarding factors (4) and (6), ZTE argues that U.S. courts have no interest in a dispute between two foreign corporations. Mot. at 15. But this again disregards the fact that the conduct at issue in this case centers upon ZTE's ████████████████████ and from deceptive conduct occurring within the U.S. via U.S.-based personnel. Further, this dispute involves the largest U.S. seller of standards-compliant Android devices and its U.S.-based researchers. Exs. H, M.

ZTE argues under factors (5) and (7) that this case is allegedly unnecessarily duplicative of other proceedings, particularly ZTE's FRAND case in China. *Id.* But ZTE has it backwards. It is ZTE's China action that is duplicative of Samsung's earlier-filed FRAND case in the UK, and this is

1    part of why Samsung seeks relief from ZTE's non-FRAND conduct in this case. Compl. ¶¶ 8, 41.

2    After the parties were unable to agree on payment terms for a patent cross-license (in view of ZTE's

3    excessive demands) and after Samsung's ███████████ was not accepted by ZTE, Samsung

4    sought a neutral, judicial resolution of the parties' dispute over FRAND licensing terms from the UK

5    High Court—which has experience resolving disputes of this nature and is not the home forum of

6    either party. ZTE responded with a duplicative, second-filed lawsuit in China, seeking a redundant

7    judgment on FRAND licensing terms from its home forum.[3] ZTE also unleashed multiple actions

8    seeking injunctions against Samsung product sales across twenty countries—due to alleged

9    infringement of patents that both parties agree will be licensed once the price is determined—in a

10   campaign to pressure Samsung to submit to ZTE's demands or to the redundant China action.

11            If anything is duplicative here, it is the array of lawsuits ZTE filed after Samsung's first-filed

12   UK case. The UK case provides a straightforward mechanism for a neutral resolution of the parties'

13   dispute over licensing payment terms, which ZTE is apparently desperate to avoid. The abusive nature

14   of ZTE's conduct has already been recognized by the UK court, which noted "it is clear in this case

15   that ZTE's campaign of litigation seeking injunctive relief is straight out of the overly aggressive SEP

16   owner's current playbook." Dkt. 26, Ex. 18 at ¶ 56. The UK court also noted, in the context of interim

17   license proceedings, that "the sum payable in ZTE's offer seems unnecessarily and unreasonably high

18   and provides some further indication of hold up." *Id.* ¶ 37. In short, it is ZTE's heavy-handed and

19   unlawful conduct that makes this lawsuit necessary to seek relief under U.S. law for misconduct by

20   ZTE that arises largely from U.S. patents and conduct that occurred within the U.S., as explained

21   above. Under these circumstances, personal jurisdiction in U.S. court is more than reasonable.

22            **B.    Samsung Adequately Pled ZTE's Violation Of Section 2 Of The Sherman Act**

23            Section 2 of the Sherman Act is violated when an entity "possessed monopoly power in the

24   relevant market" and "achieved or is maintaining monopoly power through anticompetitive conduct."

25   *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 1672493, at *4 (N.D. Cal.

---

26   [3] Notably, ZTE's own annual report shows that its "controlling shareholder" is an entity over which
27   Chinese governmental entities apparently enjoy a majority of board votes and partial ownership. Ex.
     U at 57-58. Litigating in a court that is part of the same Chinese government that controls ZTE itself
28   raises obvious bias concerns. And ZTE's desperate insistence on forcing Samsung into its redundant,
     second-filed lawsuit in China reinforces that ZTE clearly expects preferential treatment in China.

May 14, 2012). "[I]n the context of a consensus-oriented private standard-setting environment, a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms," combined with a standard-setting organization's "reliance on that promise when including the technology in a standard" and "the patent holder's subsequent breach of that promise," constitutes "actionable anticompetitive conduct" under this Section.  *u-blox AG v. Interdigital, Inc.*, No. 3:19-cv-001, 2019 WL 1574322, at *3 (S.D. Cal. Apr. 11, 2019) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007)) (internal quotation marks omitted).  This is known as an intentional deception theory of antitrust liability and is the basis of Samsung's antitrust claim.  Samsung adequately pled that claim, and none of ZTE's arguments to the contrary has merit.

### 1.    The Complaint Alleges A Legally Cognizable Antitrust Claim

ZTE argues that Samsung's antitrust claim under Section 2 of the Sherman Act should be dismissed because it "constitutes nothing more than a breach of an ETSI FRAND commitment," which the Ninth Circuit supposedly held in *FTC v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020) cannot give rise to antitrust liability.  Mot. at 15-18.  That argument is incorrect.  The *Qualcomm* decision itself expressly stated that it did not address an antitrust claim based on a defendant's "intentionally false promise to license [its SEP] on FRAND terms" coupled with a standard-setting organization's "reliance on that promise"—called the "'intentional deception' exception to the general rule."  969 F.3d at 996-97.  The Complaint here alleges that exact antitrust theory: that ZTE "committed antitrust violations through submission of deceptive FRAND licensing declarations to ETSI in connection with standard setting activities."  Compl. ¶ 10; *id.* ¶ 52 (alleging ZTE violated the Sherman Act "by deceptively committing to license SEPs on FRAND terms while intending not to honor this commitment"); *id.* ¶¶ 53-55 (alleging ZTE induced inclusion of alleged ZTE SEP technology into the standards); *id.* at 17 (requesting relief for antitrust violation "including through its submission of deceptive FRAND commitments to ETSI").  Samsung's antitrust claim is thus plainly based on ZTE's deceptive FRAND promises, not merely on ZTE's subsequent breach of those contractual promises.

Though ZTE argues that Samsung is merely "couching its claim under a deceptive-FRAND-commitment theory" while also relying on breach of ZTE's FRAND obligations, Mot. at 16, ZTE ignores that "the patent holder's subsequent breach" of its FRAND commitment is ***always*** part (just

not the **only** part) of the "actionable anticompetitive conduct" that gives rise to an antitrust claim on an intentional deception theory. *Broadcom*, 501 F.3d at 314; *see also, e.g.*, *u-blox*, 2019 WL 1574322, at *3-4; *Funai Elec. Co., Ltd. v. LSI Corp.*, No. 16-cv-01210-BLF, 2017 WL 1133513, at *8 (N.D. Cal. Mar. 27, 2017). Nor is there anything "circular" about the misconduct alleged in the Complaint. Mot. at 17. ZTE's anticompetitive scheme is not merely its breach of FRAND commitments but also is based on ZTE's deception of ETSI at the time it submitted those commitments to lock the technology of ZTE's SEPs into the standard to the exclusion of alternatives—thus improperly gaining market power for ZTE's excessive payment demands and other non-FRAND acts. Compl. ¶¶ 30, 34-35. For example, it is evident ZTE intended to deceive ETSI with false FRAND commitments at least because ZTE submitted those promises at the same time that it was already actively engaged in an array of non-FRAND conduct (including but not limited to ZTE's excessive royalty demands). *Id.* ¶¶ 34, 54. Nothing more is required to plead ZTE's antitrust violation, and ZTE's contrary argument merely seeks to impermissibly heighten the standard for pleading a defendant's intent to commit fraud. *Zenith Elecs., LLC v. Sceptre, Inc.*, No. 14-CV-05150, 2015 WL 12765633, at *6 (C.D. Cal. Feb. 5, 2015).

Numerous courts, including in this District, have held that an intentional deception theory matching the one alleged here against ZTE is a legally cognizable basis for an antitrust claim under Section 2 of the Sherman Act. *See, e.g.*, *u-blox*, 2019 WL 1574322, at *4 (denying motion to dismiss antitrust claim under Sherman Act § 2 that was based on acquiring and exploiting monopoly power due to a "false promise to ETSI to license" SEPs "on FRAND terms"); *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1023-24 (S.D. Cal. 2019) (same); *Funai*, 2017 WL 1133513, at *5, *7-8 (same); *Apple*, 2012 WL 1672493, at *4-8 (same); *Microsoft Mobile Inc. v. Interdigital, Inc.*, No. 15-CV-723-RGA, 2016 WL 1464545, at *3 (D. Del. Apr. 13, 2016) (same); *see also Broadcom*, 501 F.3d at 314 (holding intentional deception theory can be basis of antitrust claim).[4] This is the FRAND-related

---

[4] Contrary to ZTE's assertion, *Rambus Inc. v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008) did not reject the antitrust theory pled by Samsung. Rather, *Rambus* found a factual failure of proof on anticompetitive conduct due to "inability to find that Rambus's behavior [failing to submit licensing declarations] caused JEDEC's choice" of technology incorporated into the standard. *See id.* Here, however, Samsung alleged that ETSI incorporated ZTE's alleged patented technology in the standards, instead of alternatives, due to ZTE's deceptive licensing declarations. *See supra* at 2, 13-14. Further, to the extent the *Continental Automotive Systems, Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 735 (N.D. Tex. 2020) case cited by ZTE declined to accept this theory, courts have correctly rejected that approach because a deceptive FRAND commitment scheme **does** "harm[] the competitive structure of

antitrust theory the Ninth Circuit explicitly left undisturbed in *Qualcomm*.  969 F.3d at 996-97.

ZTE's argument that Samsung's allegations fail to state an antitrust claim on an intentional deception theory because they supposedly are not as "specific" as the "anticompetitive practices" alleged in *Broadcom* is unfounded.  Mot. at 17-18.  To begin, ZTE does not provide any basis for limiting the intentional deception theory to the precise facts in *Broadcom*, nor does *Broadcom* suggest its holding is so limited.  Further, Samsung's allegations align with the allegations *Broadcom* deemed sufficient to state an antitrust claim.  Just as the plaintiff alleged in *Broadcom*, Samsung alleged here a relevant market that encompasses the technology in ZTE's SEPs, Compl. ¶ 29, that ZTE's patented technology had become locked into the cellular standards, *id.* ¶ 30, that ZTE exercises monopoly power through extracting supra-competitive prices to license its SEP technology and taking advantage of high entry barriers, *id.*, that ZTE's anticompetitive conduct was the intentional false promise that ZTE would license its SEP technology on FRAND terms, *id.* ¶ 54, that ETSI relied on this promise in choosing the ZTE SEP technology for inclusion in the cellular standards, *id.* ¶ 55, that ZTE's SEP technology would not have been incorporated into the standard absent ZTE's false FRAND commitments, *id.* ¶ 53, that ZTE excluded competition by barring competing technologies, *id.* ¶ 55, and that ZTE subsequently insisted on non-FRAND licensing terms and engaged in other non-FRAND conduct despite its FRAND promises, *id.* ¶¶ 7–10, 41, 54, 56; *see Broadcom*, 501 F.3d at 315-16.

## 2.    The Complaint Alleges A Relevant Market

ZTE argues that the Complaint's definition of the "relevant market" is "vague," "overbroad," and not "plausible."  Mot. at 19.  That argument is incorrect.  An antitrust plaintiff must allege a "relevant market" that encompasses "the product at issue as well as all economic substitutes for the product."  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008).  Because "the validity of the 'relevant market' is typically a factual element rather than a legal element," a dispute as to the market definition is not ripe for resolution in a motion to dismiss unless "a fatal legal defect" is "apparent from the face of the complaint."  *Id.*  ZTE has not and cannot make that showing here.

The Complaint alleges the relevant markets—"Standardized Technology Markets"—"are the

the relevant markets."  *Microsoft*, 2016 WL 1464545, at *2 n.1; *see Broadcom*, 501 F.3d at 314.  In any event, the non-binding *Continental* decision is inconsistent with the approach taken by courts in this District, as explained above.

1    markets for input technologies comprising subject matter allegedly covered by ZTEs patents together

2    with the alternative technologies to ZTE's patents that could have been used in the cellular standards—

3    before adoption of the standards—to perform standardized functionality alleged covered by ZTE's

4    SEPs." Compl. ¶ 29. Courts have repeatedly endorsed this market definition. *See Wi-LAN*, 382 F.

5    Supp. 3d at 1021; *Microsoft*, 2016 WL 1464545, at *2; *Apple*, 2012 WL 1672493, at *5. None of those

6    cases required allegations of specific exemplary SEPs or alternative technologies to define a market.

7         Neither of ZTE's cited cases suggest otherwise. Mot. at 19-20. In *ChriMar Systems, Inc. v.*

8    *Cisco Systems, Inc.*, the court did not fault the claimant for not identifying specific exemplary

9    alternative technologies as ZTE contends, but instead found the claimant (unlike here) had not actually

10   alleged the relevant market included competing alternative technologies. 72 F. Supp. 3d 1012, 1018

11   (N.D. Cal. 2014). Moreover, in *Intel Corp. v. Fortress Investment Group LLC*, there was no § 2

12   antitrust claim, no claim was based on an intentional deception theory like the one here, and the alleged

13   "Input Technology Markets" were deemed "vague and overbroad" because they encompassed ***all***

14   "SEPs for cellular standards without any additional specificity." No. 19-cv-07651-EMC, 2020 WL

15   6390499, at *11 (N.D. Cal. July 15, 2020). Indeed, in *Intel*, the court was inclined to credit allegations

16   limited to particular entities' SEPs, but ultimately did not because it was "not clear from the complaint

17   whether" those were "the ***only*** SEPs at issue." *Id.* Here, the alleged markets are limited to

18   technologies covered specifically by ZTE's SEPs and alternatives to those technologies. Compl. ¶ 29.

19   Whether the relevant markets encompass many technologies (just as the relevant markets did in *u-*

20   *blox*) is irrelevant because the boundaries of the alleged market are defined with sufficient specificity.

21   Indeed, despite ZTE's feigned ignorance, it is ZTE itself who selected and asserted ███████████

22   ████████████   against Samsung as supposed support for ZTE's global royalty demand. Ex. C.

23   ZTE does not need to "speculate about which 'technology markets' are relevant" because, as alleged

24   in the Complaint, it is the technologies covered by ZTE's SEPs and their alternatives. Mot. at 20.

25        Furthermore, ZTE's argument that the relevant market alleged in the Complaint "is not

26   conceivable, much less plausible," because ZTE's monopoly power in that market is more likely to be

27   due to the "superior product" ZTE produced makes no sense. Mot. at 19. This fact-based argument

28   ignores specific allegations in the Complaint that ZTE obtained monopoly power by deceptively

submitting "false FRAND commitments to ETSI" because ETSI "in accordance with the ETSI IPR Policy *would not have adopted* ZTE's technologies into the standards but for its false FRAND commitments—regardless of the alleged superiority of ZTE's patented technology. Compl. ¶¶ 29-32, 53; *see also* Compl. Ex. 1 §§ 6.1, 8 (ETSI IPR Policy as to availability of licenses to SEPs on FRAND terms). This is why courts have recognized that "FRAND commitments" are "important safeguards against monopoly power" and misrepresentations as to such commitments threaten to harm "the competitive process" itself. *Broadcom*, 501 F.3d at 313-14.

3. The Complaint Alleges ZTE Willfully Acquired/Maintained Monopoly Power

ZTE's argument that Samsung has not sufficiently alleged ZTE's willful acquisition and maintenance of monopoly power because the Complaint does not "concretely identify" specific "alternative technologies" to those covered by ZTE's SEPs is equally unavailing. Mot. at 20. The Complaint specifically alleges that the alternative technologies in the relevant market are the specific "competing standards contributions by other members of ETSI" that "are capable of performing the relevant functionality of the standard," were "reasonable substitutes" to the standardized "technology allegedly covered by ZTE SEPs," and thus "could have been used in the cellular standards—before adoption of the standards—to perform standardized functionality allegedly covered by ZTE's SEPs." Compl. ¶ 29. Nothing more is required to state an antitrust claim on an intentional deception theory. Indeed, the same argument was made by the defendant in *u-blox*, *see* No. 3:19-cv-00001, Dkt. 50-1 at 16 (S.D. Cal. Feb. 25, 2019), and the court in *u-blox* rejected that argument by upholding the antitrust claim as adequately pled. *See* 2019 WL 1574322, at *4.

Additionally, ZTE's argument that identification of specific competing technologies is required to assess whether ZTE's acquisition of monopoly power was "willful" anticompetitive behavior or merely due to the supposed "superiority" of its technology fails for the same reasons discussed above in the context of the relevant markets. *See supra* § III.B.2. None of ZTE's cited cases addressed complaints that adequately alleged (as Samsung did here) that the standard-setting organization acting in accordance with its IPR policy would not have included the technology in ZTE's SEPs in the cellular standards—regardless of alleged superiority—but for ZTE's deceptive submission of false FRAND commitments promising to license those SEPs on FRAND terms. Mot. at 20 (citing

1   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Rambus*, 522 F.3d at 466-67; *Apple Inc. v. Samsung*

2   *Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2011 WL 4948567, at *6 (N.D. Cal. Oct. 18, 2011)).

3                       4.    The Complaint Alleges An Antitrust Injury

4          ZTE's assertion that the Complaint does not adequately allege an antitrust injury is meritless.

5   Mot. at 21-22.  "There are 'four requirements for antitrust injury,'" only one of which ZTE challenges

6   here: whether the injury "is of the type the antitrust laws were intended to prevent."  *Copeland v.*

7   *Energizer Holdings, Inc.*, 716 F. Supp. 3d 749, 770 (N.D. Cal. 2024); *see* Mot. at 21.  The Complaint

8   alleges that the injurious effects of ZTE's antitrust violations include increased prices for standards-

9   compliant products, exclusion of substitutable alternative technologies, and higher licensing costs.

10  Compl. ¶¶ 29-30, 56, 61.[5]  Courts have held each of these injuries are harms to competition sufficient

11  to state an antitrust claim.  *See, e.g.*, *u-blox*, 2019 WL 1574322, at *4; *Wi-LAN*, 382 F. Supp. 3d at

12  1024; *Copeland*, 716 F. Supp. 3d at 770.  There is nothing "threadbare," "conclusory," or "speculative"

13  about any of these specific injuries that courts routinely credit at the pleadings stage.  Mot. at 21-22.

14         ZTE's own cited case recognizes that "marketwide reduction[s]" in available technologies and

15  "increase[s] in prices" are the type of injuries the antitrust laws protect.  *Reilly v. Apple Inc.*, 578 F.

16  Supp. 3d 1098, 1110 (N.D. Cal. 2022).  The complaint in *Reilly*, which did not allege such antitrust

17  injuries, is thus distinguishable.  *Id.*  The facts in *ChriMar*, where allegations merely stated that the

18  challenged conduct would "cause antitrust liability," are similarly inapposite.  72 F. Supp. 3d at 1019.

19         Nor does the Complaint limit the alleged injuries to Samsung, instead expressly extending the

20  injuries to "the industry," "companies," "the public," and "marketplace competition."  Compl. ¶¶ 29-

21  30, 56, 61.  Indeed, courts have recognized that allegations of antitrust liability based on deceptive

22  FRAND declarations suffice to state an antitrust injury because the "anti-competitive effects" from

23  the patent owner's scheme—such as elimination of competition—"are inevitable" and "harmful to

24  competition."  *Microsoft*, 2016 WL 1464545, at *3 (collecting cases); *see Broadcom*, 501 F.3d at 314

25  (explaining deceptive FRAND commitments "harm[] the competitive process" itself).  Regardless, the

26  harms to Samsung also reflect injuries to the market for standards-compliant cellular products as a

27

28  ─────────────
    [5]  Although paragraph 61 appears in Samsung's unfair competition cause of action, that claim and the
    harms therein are expressly tied to ZTE's violation "of antitrust laws."  Compl. ¶ 61.

1  whole.  *See, e.g.*, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1478 (9th Cir. 1997), *aff'd*, 525 U.S. 299

2  (1999), *and overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012)

3  (recognizing increased "operating cost of … competitors" is an antitrust injury); *see also, e.g.*, Compl.

4  ¶ 56 (alleging ZTE's anticompetitive conduct caused "higher costs for licenses to Samsung and the

5  industry").  ZTE's assertion that the Complaint does not allege harm to Samsung as a "competitor" is

6  also incorrect.  Mot. at 22 n.11.  Samsung and other companies competed with ZTE in the technology

7  markets by submitting proposals to ETSI, and ZTE gained an unfair advantage over competing ETSI

8  proposals using deceptive FRAND declarations.  *See, e.g.*, Compl. ¶¶ 2-3, 21, 28-31, 56, 61; *see also*

9  *u-blox*, 2019 WL 1574322, at *4 (injury to competition by exclusion of alternative technologies).

10  ### 5.    The FTAIA Does Not Bar Samsung's Antitrust Claim

11  ZTE's assertion that the Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C.

12  § 6a, bars Samsung's antitrust claim—which is grounded in ZTE improperly obtaining monopoly

13  power in Standardized Technology Markets and wielding (among other things) U.S. SEPs in an

14  anticompetitive manner to injure the U.S. market for standards-compliant cellular products—has no

15  merit for multiple independent reasons.  Mot. at 20-21.  *First*, the FTAIA only applies to foreign

16  conduct.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 822 F. Supp. 2d 953, 956 (N.D. Cal. 2011).

17  Here, contrary to ZTE's argument, Mot. at 20, the allegations in the Complaint emphasize ZTE's U.S.

18  conduct (not solely foreign conduct).  The Complaint alleges ZTE, among other things, prosecuted

19  and enforced its 5G SEPs from the U.S. at the direction of its U.S.-based "Chief IP Strategy Officer"

20  and "Head of Patent Asset Management" Mang Zhu.  *See supra* at 7-8; Compl. ¶ 17; Dkt. 26, Ex. 20

21  at 2.  U.S.-based Zhu herself even submitted deceptive declarations to ETSI on behalf of ZTE, which

22  is a key aspect of the misconduct in question.  *See supra* at 8; Ex. Q.

23  *Second*, by its plain text, "import trade" or import commerce "does not fall within the FTAIA

24  at all" and instead "falls within the Sherman Act without further clarification or pleading."  *United*

25  *States v. Hsiung*, 778 F.3d 738, 754 (9th Cir. 2015); *see* 15 U.S.C. § 6a; *F. Hoffmann-La Roche Ltd.*

26  *v. Empagran S.A.*, 542 U.S. 155, 158 (2004) (stating the FTAIA targets "much anticompetitive conduct

27  that causes only foreign injury" but not foreign conduct that "significantly harms imports, domestic

28  commerce, or American exporters").  "Import trade" is not limited to circumstances where defendants

are importers, "but also applies if the defendants' conduct is directed at an import market." *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 471 n.11 (3d Cir. 2011); *see also Hsiung*, 778 F.3d at 756 (noting it did not matter that the defendants did not make products imported into the U.S. because their anticompetitive conduct related to products sold into the U.S.). Here, the Complaint alleges ZTE's misconduct significantly harms domestic commerce, particularly the markets for products that implement standardized cellular communication functionality covered by ZTE's SEPs. Samsung's devices are made overseas and imported into the U.S. Compl. ¶¶ 12-13; Dkt. 26, Ex. 14 at 3. While ZTE has been banned from importing its own products into the U.S., ZTE's anticompetitive conduct—both foreign and domestic—relates directly to imposing unfair and anticompetitive costs on the domestic industry for imported cellular devices. Compl. ¶¶ 5, 9, 29-30, 36, 61.

*Third*, regardless, even if the FTAIA were applicable (which it is not), its "domestic effects exception applies." *Hsiung*, 778 F.3d at 756. Under that exception, the FTAIA does not bar U.S. antitrust laws from reaching any conduct that "sufficiently affects American commerce"—*i.e.*, "has a direct, substantial, and reasonably foreseeable effect on American domestic" or "import" commerce— and "has an effect of a kind that antitrust law considers harmful"—*i.e.*, "give[s] rise to a Sherman Act claim." *Id.* at 754 (quoting *Empagran*, 542 U.S. at 162 (editorial marks omitted)). No "magic words" are required to plead this exception. *Id.* at 757. Here, the scope of Samsung's antitrust claim is "not a mystery" and plainly targets the effects of ZTE's anticompetitive conduct on domestic commerce. *Id.* Although ZTE focuses on allegations relating to its foreign misconduct and global injuries to Samsung, ZTE ignores the impact on Samsung's U.S. business and U.S. customers discussed above. *See supra* at 5-6; Compl. ¶¶ 13-14, 17, 29-30, 36, 41, 55-56, 61; *Empagran*, 542 U.S. at 158, 162-163, 166.

Additionally, because the FTAIA is not jurisdictional but instead is "a component of the merits of a Sherman Act claim involving nonimport trade or commerce with foreign nations," whether the FTAIA bars Samsung's antitrust claim raises, at most, factual disputes that are not properly resolved at this stage. *Hsiung*, 778 F.3d at 751; *see also, e.g.*, *id.* at 756, 760; *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 637 F. App'x 981, 984 (9th Cir. 2016); *TFT-LCD*, 822 F. Supp. 2d at 967.

6.    The Complaint Pleads An Antitrust Claim With Sufficient Particularity

Contrary to ZTE's erroneous assertion, Mot. at 18-19, Samsung's antitrust claim is adequately

pled with "particularity" under Federal Rule of Civil Procedure 9(b), including because the Complaint alleges the "who, what, where, when, and how" of the alleged fraud. *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 200 F. Supp. 3d 1012, 1019 (N.D. Cal. 2016). The Complaint specifically alleges "ZTE has continuously committed to ETSI" over "the past years" since at least 2020 that ZTE would license its SEPs on FRAND terms despite knowing it would fail to comply. Compl. ¶¶ 27, 33-35. Moreover, a specific exemplary declaration is attached to the Complaint and identifies "when the false FRAND declaration[] w[as] made, by whom, and for which patents" and which cellular standard, which courts have deemed sufficient to satisfy Rule 9(b)'s pleading standard. *Microsoft*, 2016 WL 1464545, at *4; Compl. Ex. 2. Not only does this exemplary declaration identify specific patents, but the attached ETSI IPR Policy makes clear that all assets in the patent families identified in that declaration—which includes specific ZTE U.S. patents—are also part of this false FRAND declaration. Compl. Ex. 1 §§ 4.3, 15(¶13); Ex. V. This case is thus nothing like *Apple* where no exemplary declaration was identified. 2011 WL 4948567, at *4. After the complaint in *Apple* was amended to identify examples as Samsung did here, the Court concluded Rule 9(b) was satisfied. *See* 2012 WL 1672493, at *7; *see also TCL Commc'ns Tech. Holdings Ltd v. Telefonakenbologet LM Ericsson*, No. 14-cv-341, 2014 WL 12588293, at *6 (C.D. Cal. Sept. 30, 2014).

Contrary to ZTE's assertion, the Complaint alleges "why" and "what" in these declarations is false. Mot. at 19. For example, ZTE submitted FRAND commitments (including the exemplary 2024 declaration) even though "ZTE was already asserting non-FRAND positions and demanding non-FRAND payment terms" and thus knew it would ***not*** honor its promise to license its SEPs on FRAND terms. Compl. ¶¶ 34-35. Regardless, even if the Complaint had "only allege[d] generally that [ZTE]'s FRAND promises were false," Rule 9(b) "allows 'intent . . . and other conditions of a person's mind' to be alleged generally." *Zenith*, 2015 WL 12765633, at *6 (quoting Fed. R. Civ. P. 9(b)).[6]

### C.    Samsung Adequately Pled ZTE's Breach Of Its Contractual FRAND Promises

Samsung sufficiently pled ZTE breached its contractual FRAND commitments and damaged

---

[6]  Because ZTE has not shown any legal defect in Samsung's antitrust claim, the Court has federal question jurisdiction over that claim—and supplemental jurisdiction over the remaining claims is not disputed. *See* Mot. at 22 (challenging jurisdiction only if the antitrust claim is dismissed). Moreover, jurisdiction would be retained even without the antitrust claim by dismissing Samsung Electronics Co., Ltd. to preserve diversity. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572 (2004).

Samsung. ZTE's contrary assertion is unsupported and inconsistent with precedent. Mot. at 22-23.

*First*, the Complaint alleges ZTE breached its contractual FRAND obligation by, "for example," failing "to provide FRAND licensing terms in response to Samsung's requests," by demanding "excessive royalties from Samsung," by engaging in an improper patent "divestment scheme," by obstructing "neutral resolutions of FRAND terms" for a license, and by improperly pursuing "patent infringement injunction actions" against Samsung while failing to offer FRAND licensing terms. Compl. ¶ 44. These exemplary breaches are further detailed throughout the Complaint. *Id.* ¶¶ 7-11, 38-41. ZTE's characterization of these allegations as "threadbare" is baseless. The allegations here are easily distinguished from those in *Jackson v. Rhino Entertainment Co.*, where the plaintiff failed to even plead what the contractual obligations were let alone how the defendants breached them. No. 16-cv-01668, 2016 WL 11002546, at *5 (C.D. Cal. Nov. 10, 2016).

Courts routinely refuse to dismiss similar breach of FRAND claims. *See Apple*, 2012 WL 1672493, at *11-12; *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078, 2022 WL 4593080, at *2-3 (E.D. Tex. Sept. 29, 2022); *Zenith*, 2015 WL 12765633, at *3-4; *TCL*, 2014 WL 12588293, at *5. Indeed, as this precedent demonstrates, pleading a breach of FRAND contract claim entails no special requirements beyond alleging facts satisfying the basic elements of a standard contract claim, all of which is adequately pled in the Complaint. Although ZTE argues that breaches based on ZTE's redundant China action and improper pursuit of injunctions on SEPs are not legally "cognizable," Mot. at 23, ZTE ignores that both breaches at least violate the good-faith negotiation requirement baked into ZTE's FRAND commitments. *See Telefonaktiebolaget LM Ericsson v. Lenovo (U.S.), Inc.*, 120 F.4th 864, 876 (Fed. Cir. 2024) (holding "a party that has made an ETSI FRAND commitment must have complied with the commitment's obligation to negotiate in good faith over a license to its SEPs before it pursues injunctive relief based on those SEPs"); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 885, 889 (9th Cir. 2012) (upholding injunction barring defendant's enforcement of injunctive relief in a parallel case based on the defendant's breach of contractual FRAND commitments). As to ZTE's breach due to patent divestments, whether successors-in-interest to ZTE divested patents are bound by FRAND promises does not address ZTE's breach for its role in the divestment scheme as alleged for example in paragraphs 38 and 39 of the Complaint. Mot. at 23.

ZTE's disputes are factual rather than legal, and thus are not ripe for resolution on a motion to dismiss.

*Second*, the Complaint adequately alleged injuries from ZTE's breaches—"including through expenditure of personnel time and resources to deal with ZTE's unreasonable conduct"—entitling Samsung to "compensatory damages" in an amount that "can reasonably be determined." Compl. ¶¶ 45-46. Contrary to ZTE's assertion, Mot. at 23, these breach of FRAND contract harms have been deemed sufficient at the pleadings stage. *See, e.g.*, *G+ Commc'ns*, 2022 WL 4593080, at *3. The *Jackson* case cited by ZTE is inapposite because there, unlike here, the plaintiff failed to allege how the contract at issue (for which the plaintiff failed to provide any allegations regarding the contract's terms) even entitled the plaintiff to any damages at all. 2016 WL 11002546, at *5 & n.8.

### D.    Samsung Adequately Pled Harm From ZTE's Unfair Competition

Unfair competition under California Business & Professions Code § 17200 ("UCL") is established when, among other things, the plaintiff alleges harm to competition and the inadequacy of legal remedies. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539, 544 (Cal. 1999). Contrary to ZTE's arguments, the Complaint adequately alleges facts meeting both elements.

*First*, the Complaint alleges that ZTE's misconduct "harms Samsung **and the public and injures marketplace competition** by, at a minimum, avoiding incorporation of alternative technologies into the standards and instead driving up the price of standards-compliant products and raising the specter of injunctions under ZTE's patent assertions." Compl. ¶ 61. There is nothing "speculative" about these specific competitive harms nor are they limited to injuries to Samsung alone. Mot. at 23-24. The facts in *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-cv-03451-RMW, 2012 WL 4845628, at *7 (N.D. Cal. Oct. 10, 2012) are distinguishable because there, unlike here, the allegations focused on harm to the plaintiff rather than marketplace competition. Moreover, ZTE's cited *Apple* case supports Samsung, not ZTE, because the court there found the plaintiff adequately alleged harms to competition, including exclusion of competing technologies and increased prices for downstream standards-compliant products just as Samsung has alleged here. 2011 WL 4948567, at *6, *9.

*Second*, ZTE is wrong in arguing Samsung has not "alleged that it lacks an adequate remedy at law." Mot. at 24. The Complaint expressly alleges "irreparable injury" from ZTE's anticompetitive conduct, which is expressly incorporated into the UCL count. Compl. ¶¶ 56-57. The facts here are

thus nothing like those in *Sonner v. Premier Nutrition Corp.*, where the plaintiff never alleged she "lack[ed] an adequate legal remedy" and instead suggested monetary relief would make her whole by seeking "the same" sum in equitable restitution as in damages. 971 F.3d 834, 844 (9th Cir. 2020).

Regardless, because Samsung "has adequately pleaded an antitrust claim" and ZTE's antitrust violations form a basis for the UCL claim, that claim is adequately pled too. *Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 3:17-CV-04319-WHO, 2018 WL 4859527, at *17 (N.D. Cal. July 23, 2018).

**E.    No Stay Of Discovery Is Warranted And ZTE Failed To Demonstrate Otherwise.**

ZTE has not even come close to satisfying its "heavy burden of making a strong showing why discovery should be denied" pending its motion to dismiss. *Smith v. Levine Leichtman Cap. Partners, Inc.*, No. 10-cv-10-JSW, 2011 WL 13153189, at *1 (N.D. Cal. Feb. 11, 2011) (internal quotation marks omitted). To stay discovery, ZTE must establish its motion is (1) "potentially dispositive of the entire case" and (2) "can be decided absent additional discovery." *Id.* "[I]f either prong of this test is not established, discovery proceeds." *Id.* Here, ZTE cannot satisfy this test, and no stay is warranted.

*First*, ZTE's motion is not potentially dispositive. "[T]he court must take a 'preliminary peek' at the merits of the pending motion to assess whether a stay is warranted," and should not treat that motion as potentially dispositive if the court finds "contested issues" exist. *Tavantzis v. Am. Airlines, Inc.*, No. 23-CV-05607-BLF, 2024 WL 812012, at *1-2 (N.D. Cal. Feb. 23, 2024). Even a cursory assessment of the merits of ZTE's motion demonstrates its arguments are "contested" (and unlikely to succeed), making it not "potentially dispositive of the entire case." *Id.* at *2; *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, No. 24-CV-03567-BLF, 2024 WL 4981090, at *2 (N.D. Cal. Dec. 4, 2024). Moreover, because leave to amend would be appropriate to cure any supposed deficiency, ZTE's motion is not dispositive. *See DiGiacinto v. RB Health (US) LLC*, No. 22-CV-04690-DMR, 2022 WL 20087460, at *2 (N.D. Cal. Dec. 5, 2022). For these reasons alone, no stay is warranted.

*Second*, Samsung agrees "no discovery should be necessary" to resolve ZTE's motion, Mot. at 25, which should be denied so the case can continue expeditiously toward trial. But if the Court is inclined to accept ZTE's flawed personal jurisdiction arguments, then Samsung should be permitted to pursue discovery to further demonstrate that ZTE's attempt to escape U.S. jurisdiction—despite its ████████████████████████████████████████ based on a patent strategy ZTE

1    conducted from within the U.S.—is meritless.  *See, e.g., Illumina, Inc. v. Qiagen NV*, No. C 16-02788

2    WHA, 2016 WL 3902541, at *5 (N.D. Cal. July 19, 2016); *Tavantzis*, 2024 WL 812012, at *2.

3         Even if both prongs of the stay test were satisfied (which they are not), the Court should

4    exercise its discretion to deny ZTE's stay request.  "Discovery is not stayed just because it imposes

5    ***some*** burden."  *SVB Fin. Grp. v. FDIC*, No. 23-CV-06543-BLF, 2024 WL 1898439, at *4 (N.D. Cal.

6    Apr. 29, 2024).  Here, ZTE "fails to identify any discovery burdens, and offers no particular or specific

7    facts to support its assertion that a stay would be necessary to spare the parties or the Court from the

8    'burden' of discovery."  *Singh v. Google, Inc.*, No. 16-CV-03734-BLF, 2016 WL 10807598, at *2

9    (N.D. Cal. Nov. 4, 2016).  As a result, ZTE fails to show any burden on it outweighs "ensuring the

10   expeditious resolution of litigation."  *SVB*, 2024 WL 1898439, at *4.  While ZTE quotes cases stating

11   stays may be appropriate in certain complex antitrust cases, Mot. at 25, ZTE fails to explain why any

12   of the comments in those cases "resonate here" where "the allegations and theories presented here are

13   not novel or particularly complex."  *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-

14   06370-EJD, 2018 WL 1569811, at *2 (N.D. Cal. Feb. 16, 2018).

15        ZTE's attempt to delay this case by conclusory and unsupported assertions of prejudice and

16   inefficiency is particularly inappropriate in view of the parties' ongoing global litigation.  At the same

17   time ZTE continues to press forward with multiple improper patent injunction actions seeking to bar

18   Samsung's sale of standards-compliant products in Brazil, China, and eighteen European countries

19   and demand supra-FRAND royalties to license ZTE's SEPs, ZTE seeks to put on hold this case where

20   Samsung requests relief from this non-FRAND scheme.  ZTE should not be permitted to delay

21   accountability for its non-FRAND conduct while it continues its improper scheme.

22   **IV.    CONCLUSION**

23        For the foregoing reasons, ZTE's motion to dismiss Samsung's Complaint and stay discovery

24   pending resolution of ZTE's motion should be denied.  Alternatively, if any of ZTE's assertions of

25   pleading deficiencies are accepted, Samsung should be granted leave to amend.

26

27

28

DATED: June 10, 2025                    Respectfully submitted,

                                        */s/ David Rokach*

                                        Brandon H. Brown (SBN 266347)
                                        KIRKLAND & ELLIS LLP
                                        555 California Street, 27th Floor
                                        San Francisco, CA 94104
                                        Telephone: (415) 439-1400
                                        Email: bhbrown@kirkland.com

                                        Gregory S. Arovas (admitted *pro hac vice*)
                                        Todd M. Friedman (admitted *pro hac vice*)
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, NY 10022
                                        Telephone: (212) 446-4800
                                        Facsimile: (212) 446-4900
                                        Email: greg.arovas@kirkland.com
                                        Email: todd.friedman@kirkland.com

                                        Edward C. Donovan (admitted *pro hac vice*)
                                        Stephen C. DeSalvo (admitted *pro hac vice*)
                                        KIRKLAND & ELLIS LLP
                                        1301 Pennsylvania Avenue NW
                                        Washington, DC 20004
                                        Telephone: (202) 389-5000
                                        Facsimile: (202) 389-5200
                                        Email: edward.donovan@kirkland.com
                                        Email: stephen.desalvo@kirkland.com

                                        David Rokach (admitted *pro hac vice*)
                                        KIRKLAND & ELLIS LLP
                                        333 W Wolf Point Plaza
                                        Chicago, Illinois 60654
                                        Telephone: (312) 862-2000
                                        Facsimile: (312) 862-2200
                                        Email: david.rokach@kirkland.com

                                        *Attorneys for Samsung Plaintiffs*