UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMSUNG ELECTRONIC CO., LTD, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ZTE CORPORATION,<br><br>　　　　Defendant. | Case No. 25-cv-02000-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

  Plaintiffs Samsung Electronic Company, Limited, Samsung Electronics America, Incorporated, and Samsung Research America bring this action against ZTE Corporation, alleging that ZTE Corporation refuses to license its patents to Plaintiffs at competitive rates. ZTE Corporation's motion to dismiss was heard before this Court on November 6, 2025. Having read the parties' papers and carefully considered the arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court **GRANTS** the motion for the following reasons.

### BACKGROUND[1]

  Plaintiffs Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Research America ("SRA") filed suit in February 2025, alleging that ZTE illegally refused to license patents to them on fair, reasonable, and non-discriminatory terms. Complaint, Dkt. No. 1 ¶ 1. SEC is a Korean corporation with its principal place of business in Korea. *Id.* ¶ 12. SEA is a New York corporation with its principal place of business in New

---

[1] These facts are drawn from the allegations in Plaintiffs' complaint, which the Court accepts as true and construes in the light most favorable to Plaintiffs. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).

Jersey. *Id.* ¶ 13. SRA is a California corporation with its principal place of business in California. *Id.* ¶ 14. ZTE is a Chinese corporation with its principal place of business in China. ZTE's Chief IP Strategy Officer and Head of Patent Asset Management, Mang Zhu, was previously based in the United States. *Id.* ¶¶ 15, 18; Dkt. No. 43 at 13.

      Plaintiffs and ZTE are involved in development of the 4G Long Term Evolution and 5G New Radio standards for cellular communication. *Id.* ¶ 2. To ensure that cellphones developed by different manufacturers can communicate with each other, manufacturers collaborate to develop standards that define protocols for communication between cellphones. *Id.* ¶ 21. Standard-setting organizations, such as the European Telecommunications Standards Institute ("ETSI"), decide which standards are "essential." *Id.* ¶¶ 21-22. Both SEC and ZTE are members of ETSI. *Id.* Once ETSI deems a standard essential, manufacturers must comply with the standard if they want to produce standard-compliant devices. *Id.* ¶ 22.

      Some companies hold patents that are required for compliance with industry standards. *Id.* ¶ 23. These are known as Standard Essential Patents ("SEPs"). *Id.* SEP holders sometimes seek excessive royalty payments because manufacturers have limited bargaining power since, in order to produce standard-compliant devices, manufacturers must use the patented-technology. *Id.* ¶ 24. ETSI has an Intellectual Property Rights Policy ("IPR") governing SEPs. *Id.* The ETSI IPR contractually requires members to disclose SEPs and to submit declarations ("IPR Declarations") making a commitment to grant irrevocable licenses to SEPs on fair, reasonable, and non-discriminatory ("FRAND") terms. *Id.*

      ZTE holds SEPs and has submitted IPR Declarations to ETSI, some of which were signed by Zhu in the United States. *Id.* ¶ 27; Dkt. No. 43 at 25. These declarations contractually commit ZTE to grant irrevocable licenses to their patents on FRAND terms. Dkt. No. 1 ¶ 27. In the instant suit, Plaintiffs allege that ZTE demanded non-FRAND payment terms in confidential licensing discussions with SEC. *Id.* ¶¶ 6, 34. Plaintiffs additionally claim ZTE fraudulently submitted FRAND licensing declarations to ETSI knowing that it would fail to comply with FRAND obligations by overcharging SEC and others. *Id.* ¶¶ 35, 40.

      Plaintiffs bring four causes of action against ZTE: (1) breach of contract, (2) declaratory

2

judgment, (3) violation of Section 2 of the Sherman Act, and (4) violation of California Business and Professions Code Section 17200.  On May 7, 2025, ZTE filed a motion to dismiss, arguing (1) the Court lacks personal jurisdiction over ZTE, (2) the Court lacks subject matter jurisdiction because the Sherman Act claim should be dismissed for failure to state a claim, destroying federal question jurisdiction, and (3) Plaintiffs failed to adequately state a claim for breach of contract and California Unfair Competition Law against ZTE.  Dkt. No. 26 at 2.  Because, as discussed below, the Court finds that it lacks personal jurisdiction over ZTE, it does not reach ZTE's remaining arguments.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (same).  In determining whether the plaintiff has met its burden, courts must accept as true all uncontroverted allegations in the plaintiff's complaint and resolve all disputed facts in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800 (citation omitted).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154.  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (same).  California's long-arm statute permits jurisdiction to the full extent the due process clause permits. *Williams*, 851 F.3d at 1020; *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); Cal. Code. Civ. P. § 410.10.  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01.  In reviewing the "nature and extent of the defendant's relationship with the forum state," the Supreme Court

recognizes two types of personal jurisdiction: general and specific jurisdiction. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 352 (2021) (citation and quotations omitted). Because Plaintiffs do not argue this Court has general personal jurisdiction over ZTE, it need only examine if specific jurisdiction exists.

Specific jurisdiction requires a defendant have sufficient minimum contacts with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are three requirements for specific jurisdiction: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). Plaintiff has the burden of satisfying the first two prongs of this "minimum contacts" test. *Pebble Beach*, 453 F.3d at 1154-55. If plaintiff satisfies the first two prongs, the burden shifts to the defendant to "present a compelling case" that jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802 (*quoting Burger King*, 471 U.S. at 476-78).

When an antitrust claim is present, personal jurisdiction is analyzed on a nationwide basis. *See GoVideo, Inc. v. Akai Electric Co.*, 885 F.2d 1406, 1407, 1417 (9th Cir. 1989) (holding courts "examine the [defendant's] national contacts" when determining whether personal jurisdiction exists for Sherman Act claims). Normally, specific jurisdiction must exist for each claim asserted against a defendant. *See Action Embroidery Corp.*, 368 F.3d at 1180. But where, as here, a federal claim subject to nationwide personal jurisdiction is "combined in the same suit" with other claims that "arise[] out of a common nucleus of operative facts," the "court may assert pendent personal jurisdiction over a defendant" as to those other claims. *Id.*

**DISCUSSION**

Defendants argue that the Court cannot assert personal jurisdiction over ZTE. Dkt. No. 26 at 14-23. Plaintiffs contend that the Court has specific jurisdiction over ZTE as to the Sherman Act claim and that, because the state law claims "arise[] out of a common nucleus of operative

facts," pendent jurisdiction exists as to the state law claims.[2] Dkt. No. 43 at 4-5. Because pendent jurisdiction as to the state claims exists only if the Court has specific jurisdiction over ZTE for the Sherman Act claim, the Court examines specific jurisdiction as to the Sherman Act claim first. *See Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985)) ("Pendent jurisdiction exists where there is a sufficiently substantial federal claim to confer federal jurisdiction, and a common nucleus of operative fact between the state and federal claims.").

The first prong of the specific jurisdiction test can be satisfied by purposeful availment, purposeful direction, or "by some combination thereof." *Davis v. Cranfield Aerospace Sols.*, Ltd., 71 F.4th 1154, 1162 (9th Cir. 2023). The Ninth Circuit does not " 'impose a rigid diving line' between purposeful availment and purposeful direction." *Impossible Foods*, 80 F.4th at 1088-89 ("At the end of the day, the purposeful direction and availment tests simply frame our inquiry into the defendant's 'purposefulness' vis-à-vis the forum"). "[W]hen considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum [] and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Davis*, 71 F.4th at 1162.

A defendant purposefully directs its conduct at a forum when it "expressly aim[s] acts at the forum state knowing that they would harm the plaintiff there." *Impossible Foods*, 80 F.4th at 1088. Courts in the Ninth Circuit apply an effects test to determine whether a defendant purposefully directed its tortious conduct at the forum. *Lenovo (United States) Inc. v. IPCom GmbH & Co., KG*, No. 5:19-CV-01389-EJD, 2019 WL 6771784, at *5 (N.D. Cal. Dec. 12, 2019) ("*Lenovo I*") (collecting cases). The effects test requires that a defendant "(1) committed an

---

[2] Plaintiffs additionally assert in a footnote that "ZTE's California contacts are also independently sufficient to support personal jurisdiction over ZTE as to all claims, each of which arise from and relate to ZTE's FRAND contracts." Dkt. No. 43 at 4-5, fn. 1. However, "[a]rgument in footnotes will not be considered by the Court." AMO Standing Order at 5; *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n. 8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived."). Thus, the Court does not consider whether specific personal jurisdiction is proper based on ZTE's alleged California contacts, and instead addresses only whether the Court has pendent personal jurisdiction over ZTE arising out of Plaintiffs' Sherman Act claim for the United States forum.

intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quotations and citations omitted).

Plaintiffs argue the effects test is satisfied here because (1) in licensing discussions between SEC and ZTE, ZTE alleged that SEC was infringing 40 United States patents held by ZTE and (2) the parties entered into two previous contracts which were governed by California and New York law. Dkt. No. 43 at 11-12. Neither argument is persuasive.

Plaintiffs rely on *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, No. 19-CV-02520-LHK, 2019 WL 6735604 (N.D. Cal. Dec. 11, 2019), to support their contention that, because ZTE identified SEC's alleged infringement of United States patents in licensing negotiation discussions with SEC, ZTE purposefully directed its conduct towards the United States.[3] Dkt. No. 43 at 11-12. But in *Avanci*, the court found purposeful direction because "Defendants targeted their conspiracy at U.S. markets and companies, including Plaintiff" and "Defendants allegedly carried out their conspiracy in part through a U.S. entity." *Id.* at *7. Here, Plaintiffs have not alleged ZTE carried out its acts through a United States entity. And while two Plaintiffs are United States companies, Plaintiffs conceded at the hearing that ZTE only ever engaged in licensing discussions with SEC, a Korean corporation, not a United States company as in *Avanci*. The case is therefore inapposite. Further, courts in this district have expressly held that the invocation of United States patents does not satisfy the purposeful direction requirement. *See, e.g, Lenovo I*, 2019 WL 6771784, at *8-9 ("That the licensing negotiations included U.S. patents from which [defendant] would derive the bulk of its licensing revenue is also insufficient to establish requisite minimum contacts with the forum. The amount of [defendant's] potential licensing revenue for U.S. patents is a function of [p]laintiffs' contacts with the forum, not [defendant's] contact with the forum.").

Plaintiffs' argument that choice of law provisions in previous contractual agreements between the parties constitute purposeful direction fares no better. Plaintiffs provide no legal authority to support this contention, and the Court is swayed by others in this district that have

---

[3] Plaintiffs also cite to *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079 (9th Cir. 2023), which is discussed *infra* in Section III, and *International Rectifier Corp. v. Samsung Electronics. Co.*, 361 F.3d 1355 (Fed. Cir. 2004), which does not discuss personal jurisdiction.

expressly held to the contrary. *See Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 593 (N.D. Cal. 2022) ("there needs to be more than just a choice of law clause to establish that the defendant directed his activity at the forum."); *Lenovo I*, 2019 WL 6771784, at *9 (rejecting "purported invocation of the protections of United States law during license negotiations" as satisfying specific personal jurisdiction). Thus, the Court finds that Plaintiffs have not shown ZTE purposefully directed its conduct towards the United States.

Plaintiffs further argue that ZTE purposefully availed itself of the United States because of ZTE's "longstanding and ongoing relationships with the U.S. and U.S. citizens." Dkt. No. 43 at 9. A defendant purposefully avails itself of a forum by "creat[ing] continuing relationships and obligations with citizens of [the forum]." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020). To support purposeful availment, Plaintiffs contend that (1) ZTE has many years of multiple interactions with the United States Patent Office to secure United States patents, (2) ZTE engaged with United States law firms to prosecute patents and patent applications, (3) United States-based personnel are named inventors on several of ZTE's SEPs, (4) ZTE's patent strategy was led for years by an employee within the United States, (5) ZTE selected United States forums in relevant contracts, and (6) ZTE engaged in licensing discussions with United States companies such as Apple. Dkt. 43 at 15. Plaintiffs only cite authority for the propositions that (1) engaging United States law firms to prosecute patents and (2) engaging in licensing discussions with United States companies may constitute purposeful availment. Plaintiffs have not provided any bases to support their assertions that ZTE's other contacts with the United States establish purposeful availment, and the Court declines the invitation to break that ground.[4] Instead, the Court addresses only Plaintiffs' arguments for which they cite case law.

Plaintiffs contend that hiring a United States law firm to prosecute patents establishes purposeful availment. Dkt. No. 43 at 15 (citing *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147

---

[4] Even if ZTE's United States-related activity invoked by Plaintiffs could establish purposeful availment, Plaintiffs fail to provide any explanation of the "direct nexus" between the actions and the Sherman Act claim. Dkt. 43 at 16-17; *see Impossible Foods*, 80 F.4th at 1086 (holding that "the claim must be one which arises out of or relates to the defendant's forum-related activities").

7

(Fed. Cir. 2021)). But *Trimble* is inapposite. In *Trimble*, the recipient of demand letters was domiciled in the forum state, *id.* at 1156, whereas here, the only Plaintiff with which ZTE engaged in licensing discussions – SEC – is a Korean corporation. Compl. ¶ 12. *Trimble*'s holding is also limited "to the purposeful availment inquiry in declaratory judgment patent cases[,]" *id.* at 1155, and therefore does not support Plaintiffs' argument that jurisdiction exists over ZTE as to the Sherman Act claim.

Plaintiffs further argue that ZTE's licensing discussions with United States companies support purposeful availment, Dkt. No. 43 at 15, because "the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed." *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1365 (Fed. Cir. 2006). However, *Breckenridge* held that personal jurisdiction was improper if "[defendants'] only additional activities in the forum state [in addition to sending cease and desist letters] involve unsuccessful attempts to license the patent there." *Id.* at 1366. Here, Plaintiffs do not allege that ZTE actually licensed patents to Apple or other United States companies. Compl. ¶ 17 ("ZTE has directed communications and assertions to multiple companies located in this District . . . including for example Apple"). They only argue that ZTE engaged unsuccessfully in licensing discussions with United States companies. *Id.* Therefore, these contacts with United States companies are not enough to satisfy purposeful availment under *Breckenridge*.

Lastly, Plaintiffs argue that the first prong of the personal jurisdiction test can be satisfied when a "defendant's actions were largely taken from *within* the forum." Dkt. No. 43 at 13 (quoting *Impossible Foods*, 80 F.4th at 1089 (emphasis in original)). Plaintiffs have not identified a single district court case that interprets and applies *Impossible Foods* in this way. Moreover, *Impossible Foods* does not apply here. In that trademark case, the court found that defendant satisfied the first prong of the specific jurisdiction test because the defendant previously operated from the forum state and its sole employee "largely" took actions from within the forum state. *Impossible Foods*, 80 F.4th at 1089. Here, there are no allegations that ZTE was ever based in the United States. While Plaintiffs allege that ZTE's Chief IP Strategy Officer and Head of Patent Asset Management was based in the United States and that this employee signed IPR declarations

submitted to ETSI, Dkt. No. 43 at 14, ZTE submitted over 200 declarations to ETSI, and Plaintiffs only point to 18 declarations signed by ZTE's United States employee. *See* Dkt. No. 43 at 14; Dkt. No. 43-18. Therefore, Plaintiffs have alleged that less than 10 percent of ZTE's IPR declarations were submitted from within the United States. *See* Dkt. No. 43 at 14, Dkt. No. 43-18. This evidence does not adequately establish that ZTE's actions were largely taken from within the forum. *See Successor Agency to Former Emeryville Redevelopment Agency & City of Emeryville v. Swagelok Co.*, No. 3:17-CV-00308-WHO, 2024 WL 3952587 (N.D. Cal. Aug. 27, 2024) (finding *Impossible Foods* inapposite because defendant's contacts with the forum state were attenuated and sporadic). Plaintiffs' invocation of *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597 (9th Cir. 2018) at the hearing similarly fares no better as there the defendant's allegedly defamatory statement, which gave rise to the cause of action in the lawsuit, was made in the forum state. *Id.* at 603.

Moreover, all the parties' licensing negotiations occurred outside the United States and the negotiations themselves concerned global cellular communication standards overseen by ETSI, a French organization. Dkt. No. 53 at 7; *see Glob. Commodities Trading Grp., Inc.*, 972 F.3d at 1108 ("In cases where we have held that a contract between a forum resident and a non-resident did not give rise to specific jurisdiction in the forum, we have done so because the business relationship between the parties was fleeting or its center of gravity lay elsewhere."). The Court is not persuaded that ZTE's sporadic United States connections constitute actions "largely" taken from the United States, or that they establish purposeful availment or direction.

Plaintiffs have failed to carry their burden of establishing the first prong of the specific jurisdiction test, that ZTE "purposefully direct[ed] [its] activities toward the forum or purposefully avail[ed] [itself] of the privileges of conducting activities in the forum," thus the Court need not consider the remaining prongs of the test. *See Davis*, 71 F.4th at 1166 (declining to reach the remaining two prongs of the specific jurisdiction test where the plaintiff had failed to establish defendant had sufficient minimum contacts with the forum state). Because the Court does not have personal jurisdiction over ZTE as to the Sherman Act claim, the claim must be dismissed, and it follows that the Court does not have pendent jurisdiction over the state law claims. *See*

9

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985)) ("Pendent jurisdiction exists where there is a sufficiently substantial federal claim to confer federal jurisdiction, and a common nucleus of operative fact between the state and federal claims.").

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** ZTE's motion to dismiss for lack of personal jurisdiction with leave to amend. "Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and citations omitted). Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original).

At this stage, the Court cannot determine as a matter of law that amendment would prove futile. Plaintiffs may still be able to proffer factual allegations that support the Court's exercise of personal jurisdiction over ZTE. Accordingly, the Court will grant Plaintiffs leave to file an amended complaint. Plaintiffs may not add new claims or parties absent consent from Defendants or leave of Court. Any amended complaint shall be filed no later than February 20, 2026.

The Court's order staying discovery, Dkt. No. 56, remains in effect until the pleadings are settled.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

To the extent the parties seek to seal any information contained in this Order, they must file one joint, administrative motion to seal no later than February 6, 2026. Should the parties fail to file a motion to seal, this Order will be posted publicly on the docket.

**IT IS SO ORDERED.**

Dated: January 30, 2026

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**